SWEET v. HENRY et al.

(Supreme Court, Appellate Division, Fourth Department. November 19, 1901.)

1. FORECLOSURE SALE—PURCHASER FROM VENDEE.
    Where owner of fee is in possession of part of the land as such owner, and afterwards purchases an outstanding unrecorded lease of the balance, and is entitled to and enters into possession of it, a purchaser of such premises from a vendee at foreclosure sale is not bound to ascertain the nature and terms of the lease.

2. SAME—REMOVAL OF BUILDINGS.
    Any right of removal of the buildings on such premises, which to all appearances are a part of the realty, given by such lease, is extinguished as against the purchaser for value, in absence of knowledge as to such right.

**8. SAME—BONA FIDE PURCHASER.**
The purchaser is not bound at his peril to ascertain the condition of such lease, because the owner of the lease, who is also owner of the fee, is in possession of the premises.
Spring and Williams, JJ., dissent.

Appeal from special term, Allegany county.

Action by Warner M. Sweet against Augustus W. Henry and others. From a judgment in favor of defendants, plaintiff appeals. Reversed.

The action was commenced on the 14th day of June, 1899, to restrain the defendants from removing a building called a "skating rink" from certain premises situate in the village of Hume, Allegany county, N. Y., of which premises the plaintiff was the vendee in possession under a land contract, subject to the following exception and reservation contained in the deed to plaintiff's vendor, and in effect incorporated in the land contract, namely: "Also excepting and reserving the use of the land on which a certain skating rink now stands, for the use of said rink, for the term of fifteen years from the year 1884." The plaintiff claims that upon facts disclosed by the evidence the building in question and the land on which it stands belong to him, and that he is entitled to its exclusive possession, or, at least, he, as such owner, is entitled to such possession, subject only to the right of the defendant Hetty Henry to occupy and use it until the expiration of said term of 15 years, and that she has no right, by virtue of such reservation or otherwise, to remove said building. The defendant Hetty Henry contends that as the assignee of the defendant Augustus W. Henry, and by virtue of a provision in a lease of the premises which was assigned to him, she was, at the time of the commencement of this action, the absolute owner of the building; that it was personal property, and that she was entitled to remove it at will.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and HISCOCK, JJ.

Fred A. Robbins, for appellant.
George W. Harding, for respondents.

McLENNAN, J. There is very little conflict as to the facts. In any event, the findings of fact by the referee must be regarded as conclusive, there being evidence to support the same, and therefore only such of them need be stated as are necessary to present the questions of law involved. Prior to the 31st day of July, 1884, one Van Dresser was the owner of a hotel and a vacant lot adjoining, in the village of Hume, N. Y. On that day, by an instrument in writing, he leased the vacant lot to R. D. Sweet and N. P. Baker for the term of 15 years. No rent was reserved, but the lease contained the following:

"Said second parties agree that they will, during said term, maintain on said premises a skating rink or public hall, for which purpose alone these premises are leased, which building and fixtures thereto belonging second parties may remove at the end of their term."

The lease was never recorded. Sweet and Baker entered into possession of the lot immediately, and erected a substantial structure for a skating rink thereon. The main building erected was about 100 feet long and 38 feet wide, and there was a lean-to 61 feet long and 10 feet wide. All was set upon substantial stone abutments, 52 in number, except one end, which rested upon the bedrock, an ex-

cavation having been made for that purpose. When completed it had all the appearance of a permanent structure, and there was nothing to indicate that it was not, or was not intended to be, a part of the realty. After the building had been thus constructed, and was being used by Sweet and Baker as a skating rink, and on the 1st day of May, 1885, Van Dresser, the owner of the fee of the hotel and premises in question, conveyed the same to one Crandall by deed bearing date that day. Said deed contained the reservation above quoted, to wit: "Also excepting and reserving the use of the land on which a certain skating rink now stands, for the use of said rink, for the term of fifteen years from the year 1884." Crandall on the same day gave back a mortgage to Van Dresser to secure $2,200, being a part of the purchase price of the property. The mortgage contained the reservation above quoted, which appeared in the deed, and in exactly the same language. The mortgage was assigned by Van Dresser to one Relief Sweet, September 10, 1885, and by her assigned to John Dunn, March 6, 1886. May 1, 1886, Crandall conveyed the hotel and premises in question to the defendant Augustus W. Henry, by deed dated that day, which also contained the clause above quoted. In June, 1886, the defendant Augustus W. Henry, then being the owner in fee of the hotel and of the lot in question, took assignments from Sweet and Baker of the lease made by Van Dresser to them, and of all their right, title, and interest in and to the skating rink. Neither of such assignments was recorded. Thereafter, commencing in 1889, the defendant Augustus W. Henry made extensive and valuable improvements to the skating rink building; converted it into an opera house; put in a gallery and stage; ceiled it with natural wood; in all expended upon it about $1,500; and said opera house was used by Henry in conjunction with, or as an adjunct to, his hotel for 10 or 12 years thereafter. In June, 1897, an action was commenced to foreclose the purchase-money mortgage given to Van Dresser by Crandall, and which had been assigned to Dunn, and the action proceeded to judgment in the ordinary way; the description in the complaint, in the lis pendens and judgment, all containing the exception and reservation contained in the mortgage and in all the conveyances above referred to. The sale of the premises under the decree of foreclosure took place March 18, 1898, and the plaintiff in that action, Nellie Dunn, who was the executrix of John Dunn, bid in the property, and thereupon a deed of the same was executed and delivered to her, which also contained the exception and reservation above referred to. Thereafter, and on the 28th day of April, 1898, Nellie Dunn conveyed the property to one Howden by deed also containing such exception, and on the day following Howden entered into an executory contract of sale of the premises with the plaintiff, which were described by reference to the deed to Howden. The plaintiff immediately went into the actual possession of the hotel under said contract, and the defendant Augustus W. Henry removed from the hotel into the skating rink building, and continued to occupy the same until the commencement of this action, as is claimed in virtue of his own right, or through that of the defendant Hetty Henry, to whom he executed a bill of sale of "the skating

rink and fixtures thereto belonging," as hereinafter stated. It will be observed that until immediately prior to the time when the plaintiff became the vendee of the premises in question by virtue of his contract with Howden, and until the foreclosure and sale of the premises under the Dunn mortgage, the defendant Augustus W. Henry was the owner of the fee of the premises in question, as well as of the lease made by Van Dresser to Sweet and Baker. A few days after the foreclosure action was commenced Augustus W. Henry, who was financially embarrassed, assumed to execute a bill of sale of the opera house and furniture therein to his mother, Rosetta Henry; and on the 29th day of April, 1898, the day after the plaintiff entered into the contract with Howden for the purchase of the property, Rosetta Henry assumed to assign and transfer said bill of sale to the defendant Hetty Henry. Shortly before and at the time of the commencement of this action the defendant Hetty Henry claimed to own the opera house and skating rink building in question, and, with the assistance of the defendants Augustus W. Henry and Joseph W. Ayre, attempted to remove the same from the premises. This action was brought to restrain them from so doing.

The learned referee found, as conclusion of law, that the lease to Sweet and Baker merged and was extinguished in the fee, because of the fact that the defendant Augustus W. Henry became, and for years continued to be, the owner of the fee, and also of said lease; but he found that the opera house or skating rink remained personal property, and that the plaintiff was estopped by the recitals in the deeds, mortgages, foreclosure proceedings, etc., from asserting that said building became part of the real estate. He also found that it was not the intention of Augustus W. Henry at any time that the building should become a part of the realty, and that the defendant Hetty Henry was the owner of it, and had the right to remove it, and for that reason the complaint was dismissed upon the merits, as above stated, and judgment was entered accordingly.

In none of the deeds, mortgages, assignments, foreclosure proceedings, or in the contract for the purchase of the property made between the plaintiff and Howden, his vendee, all of which were duly recorded, is there any reference to the lease made by Van Dresser to Sweet and Baker, under which the defendant claims, and no reference is made in any manner to that clause of the lease which gives to said lessees or their assigns the right to remove the skating rink from the land on which it stands. Those instruments simply contain the clause quoted, which reserves the use of the land on which the skating rink stands for the term of 15 years from 1884. There is no evidence tending to show that the plaintiff, prior to purchasing the premises in question from Howden, knew that the defendant Augustus W. Henry was or claimed to be in possession of the skating rink under the lease which he purchased from Sweet and Baker. Such lease, or the assignment thereof, was not recorded. The plaintiff did know, especially if he examined the record title,— which he is presumed to have done,—before he purchased the premises in question, that the defendant Henry was the owner of the fee of the premises at the time he purchased, and continuously for

10 years prior thereto; and, so far as appears, the plaintiff had no information that he (Henry) was not in possession of the premises as owner of such fee. Nothing appears which could have led the plaintiff to suppose that Henry was occupying under some lesser title, when he was the owner of the fee or paramount title.

We think the exception or reservation contained in the deeds and conveyances referred to cannot, in any sense, be held to constitute such notice to the plaintiff, or that they are sufficient even to have put him upon inquiry. The clause referred to in his contract, and the record title preceding it, at most only informed him that he was not entitled to the use of the land on which the skating rink stood for the term of 15 years from the year 1884; that said land was reserved for the use of such rink for said term. The defendant Henry was in possession of the hotel; was in possession of the skating rink, and the land on which it stood, at the time of plaintiff's purchase, as the owner of the fee; and it was not incumbent upon the plaintiff to inquire whether he claimed to be in possession by virtue of some lesser title, to wit, a lease which it was not intended should merge in the greater title, but of which intention the plaintiff was in no manner informed.

The rights of the defendant Hetty Henry must be precisely as would be those of Augustus W. Henry, in case he had continued to be the owner of the lease in question. It cannot be that a person may be the owner of the fee of real property, and in possession, and because he is also the owner of a lease of the same premises, made to another party before he purchased the fee, a bona fide purchaser of such premises is bound to inquire as to the rights of such owner because of his alleged possession under such lease, when as owner of the fee he was entitled to full possession and enjoyment of the premises. We may assume that if Sweet and Baker had continued to be the owners of the lease, and had remained in possession of the skating rink, the plaintiff would have been under the obligation of ascertaining the nature of such possession, the contents of the lease, and that his purchase of the premises would have been subject to all the rights which Sweet and Baker had under such lease, notwithstanding the instrument was not recorded; but we think it cannot be said that, the defendant Henry being the owner of the fee and in possession of the whole property, the plaintiff was bound to ascertain at his peril whether he claimed to be in such possession by virtue of such ownership, or in virtue of some lease or inferior title.

It is unnecessary to discuss or determine whether or not when the defendant Henry obtained the lease it merged in the fee which he owned, or as to whether or not the terms of the lease were sufficient to make the building in question personal property. As we have seen, the structure had all the appearance of being part of the realty. There was nothing about it to indicate that it was not. Under those circumstances, we are of the opinion that the plaintiff, being a purchaser in good faith, without knowledge of the defendant's intention that the building should be personal property, and without knowledge that the defendant claimed to occupy

the building as lessee rather than as owner, was justified in assuming that the building was a part of the realty; that the fact that the defendant was in possession did not require the plaintiff to ascertain the nature of such possession, and to know that the defendant was not in such possession by virtue of being the owner of the fee of the premises, but by virtue of a lease.

The rule of law applicable to this state of facts may be stated as follows: Where the owner of the fee of certain lands is in possession of a part as such owner, and afterwards becomes the owner of an outstanding unrecorded lease of the balance, and entitled to and immediately enters into possession of it, a purchaser of such premises from a vendee at a foreclosure sale of the same is not bound to ascertain the nature and terms of such lease. Any right of removal of the buildings upon such premises, which to all appearance are a part of the realty, given by such lease, are extinguished as against such purchaser for value, in the absence of knowledge on his part as to such right. Such purchaser is not bound, at his peril, to ascertain the conditions of such lease, because of the fact that the owner of the lease, who is also the owner of the fee, is in possession of the premises.

In the case at bar, as we have seen, the exception and reservation contained in the deed to plaintiff's grantor, and which was in substance incorporated into his contract, cannot be construed to be notice to the plaintiff that the defendant had the right to remove the buildings in question at the expiration of the term of the lease. Such clause simply reserved from the plaintiff the use of the land on which the building stood, for the use of such building, until the end of the term. It in no manner informed him that the defendant, or any one else, had or claimed to have the right to remove a part of the realty which he had purchased. It follows that the judgment appealed from should be reversed, and a new trial granted, with costs to the appellant to abide event.

Judgment reversed, and new trial ordered, with costs to the appellant to abide event.

ADAMS, P. J., and HISCOCK, J., concur.

SPRING, J. (dissenting). July 31, 1884, Van Dresser owned a hotel property in the town of Hume, Allegany county. He leased, by an instrument acknowledged, but not recorded, a portion of the premises to Nelson Baker and R. Duane Sweet for the term of 15 years. The lease contained this clause:

"Said second parties agree that they will during said term maintain on said premises a skating rink or public hall, for which purpose alone these premises are leased, which building, and fixtures thereto belonging, second parties may remove at the end of their term."

Pursuant to this provision the lessee erected the skating rink, which projected beyond the boundaries of the land described, and onto the premises of the lessor, for the space of six feet. This extra occupation was with the assent of the lessor, and the erection of the building was with the understanding that it was to be removed within the term of the lease. In May, 1885, after the erection of the rink,

Van Dresser conveyed the hotel premises to one Crandall by warranty deed, but the following exception occurs in the conveyance: "Also excepting and reserving the use of the lands on which a certain skating rink now stands, for the use of said rink, for the term of fifteen years from the year 1884." A mortgage was given back containing the same exception, which runs through all the subsequent conveyances. In May, 1886, the defendant Augustus W. Henry became the owner of the hotel property by a deed reciting a like exception. At the time the occupancy of the hotel property was disconnected with that of the rink. The possession of the latter was continued along by virtue of the lease, and so recognized by the owner of the hotel. In June, 1888, Henry obtained an assignment of the leasehold by instruments filed in the town clerk's office, and thereafter he was the owner of the entire property, but flowing from the distinct sources stated. In 1898 the mortgage mentioned was foreclosed. The complaint, the lis pendens, the notice of sale, judgment, and referee's deed each contained the exception referred to. There was no allegation in the complaint impeaching the lease or the right of occupancy thereunder. The plaintiff, Nellie Dunn, the purchaser at the sale, conveyed to Carl J. Howden by quitclaim deed bearing date April 28, 1898, and the latter entered into a written contract of sale with the plaintiff on the following day, and which contained the usual exception clause. The plaintiff subsequently obtained a deed from Howden, which he claimed on the trial he had lost. On the 28th day of April, 1900, after the commencement of this action, Howden gave another quitclaim deed to the plaintiff, which did not contain the clause excepting the rink. The use of the building as a rink was discontinued, but it was fitted up by Henry as an opera house or hall for holding public meetings and entertainments. Shortly after the foreclosure sale the defendant Augustus W. Henry removed from the hotel, but continued to occupy the opera house or hall with his family. On the 25th of June, 1897, the defendant Augustus W. Henry, by bill of sale, transferred such opera house, with other property, to his mother, Rosetta Henry, and the latter, by assignment, transferred said bill of sale to the defendant Hettie Henry, who is the wife of Augustus W. Henry. Hettie Henry in June, 1899, attempted to move the opera house from the premises, and this action was commenced to restrain her from so doing.

It will be observed that the exception which runs all through the conveyances reserves "the use of the land" on which the rink stood, and beyond that reserved it explicitly "for the use of the said rink"; making the predominating feature of the exception, not the land itself, but its use, and that use for the maintenance and operation of a rink. Any one reading this exception clause, therefore, would appreciate that its object was to separate from the land itself this substantial structure, and would be forced to the conclusion that such an unusual exception must be based upon some title or tangible right.

Prior to the time the defendant Augustus W. Henry became the owner of both the rink and the hotel premises, including the land on which the rink stood, the possession of each had been by different

owners. While the defendant acquired title to all the property, the referee has found, on evidence which sustains the finding, that there was no merger of the title to the rink and the hotel premises in the said defendant. There was accordingly the same separation as prior to his ownership. Certainly, during the occupancy by the independent owners, possession of this rink or hall 'was sufficient notice to a grantee under a conveyance containing this significant exception, · who should be on his guard, and ascertain what constitutes the foundation of that possession or title. Every grantee understood by the exception in his deed that there was some separation of title, and it was incumbent upon him to ascertain its source as long as it was supported by occupancy. If there was no merger, as the defendant had recognized the outstanding leasehold title by purchasing it, there was the same duty upon any subsequent purchaser of the land to find out why the reservation was still incorporated in the deeds and papers, although Henry owned the entire property. Whether there was a merger or not depended upon the intention of Henry, and it devolved upon the plaintiff, if he did not fully understand what that intention was, to inform himself thereof. When· the land was sold at foreclosure sale, in 1898, there had been a concurrent occupancy of the two pieces of property by Augustus W. Henry for nearly 10 years, and yet the judgment, as well as every other paper in that action describing the premises, recited the exception. The plaintiff acquired his only title by virtue of this foreclosure, and the judgment effectually estopped him from asserting there was a merger,—a union of the skating rink property in that of the hotel property,—for the distinction is recognized in all the foreclosure proceedings.

· As stated, the only title the plaintiff had secured was the mortgage foreclosure sale, and, unless he took title to the skating rink by virtue of the referee's deed, he had none at all. When the mortgage was taken the separation of ownership of these two pieces of the property was distinct. So the mortgage did not become a lien on the rink property at that time. It did not subsequently become a lien unless there was a union,—a merging of the title of the rink with that of the hotel premises,—and the referee has settled that question by deciding there was none.

There are several other facts which it seems to me make against the plaintiff's contention. In the conveyance from Crandall to Henry, in May, 1896, aside from the reservations quoted, there appears the following recital: "That, when the said special uses relating to the skating rink, lockup, and watering trough shall have lapsed by operation of time, the fee absolute of the land upon which the same stand shall become vested, and pass by this conveyance as though such had never been created." This implies that the land was distinctive from the buildings. The plaintiff paid for the property he purchased $1,600. The other premises were worth that sum, and, with the opera house added, the value was considerably in excess of the purchase price. The plaintiff had known Henry for 13 or 14 years, and "knew of the exception of the skating rink in all the deeds when I took both my deeds, and when I entered into the written agreement (Exhibit H) with Carl Howden." The skating

rink was the exception which attracted his attention, and of which he knew, as contradistinguished from any interest in the land. He testified, further: "I calculated that I got property that my deed did not cover." This can have reference only to the skating rink or hotel. These facts, coupled with the finding that there was no merger, make the two titles, which were defined upon the erection of the skating rink, continue separate.

The judgment should be affirmed, with costs to the respondents.

WILLIAMS, J., concurs.